**DICKINSON WRIGHT PLLC**
John L. Krieger, Esq.
Nevada Bar No. 6023
Email: jkrieger@dickinsonwright.com
Jordan M. Marchello, Esq.
Nevada Bar No. 16926
Email: jmarchello@dickinsonwright.com
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169-0965
Phone: (702) 550-4400
Fax: 844-670-6009

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ALEXZANDRIA MORGAN, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>SENNIE "SKIP" MARTIN III, an individual, and SOUND SUCCESS, INC., a Nevada corporation.<br><br>  Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff Alexzandria Morgan ("Morgan"), by and through her counsel of record, the law firm of Dickinson Wright PLLC, brings this action against Defendants Sennie "Skip" Martin III ("Skip") and his record label, Sound Success, Inc. ("SS") (collectively, "Defendants"), and allege as follows:

### NATURE OF THE CASE

This is an action for declaratory judgment under 28 U.S.C. § 2201, or in the alternative, copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, and for breach of contract and the implied covenant of good faith and fair dealing under the common law of the State of Nevada.



**THE PARTIES**

1. Morgan is an individual who resides in Las Vegas, Nevada.

2. Upon information and belief, Skip is an individual who resides in Las Vegas, Nevada.

3. Upon information and belief, SS is a corporation incorporated in the State of Nevada, which maintains a principal place of business at 3145 E. Warm Springs, Ste. 200, Las Vegas, Nevada, 89120.

**JURISDICTION AND VENUE**

4. This Court has original subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1338. This case primarily involves a federal question. This Court also has supplemental jurisdiction over the state law claims in this matter pursuant to 28 U.S.C. § 1367(a).

5. Upon information and belief, this Court may exercise personal jurisdiction over Defendants by virtue of Defendants, and each of them, committing acts in the State of Nevada which they knew or should have known would cause injury in Nevada. Additionally, personal jurisdiction is proper over Skip because he is domiciled in the State of Nevada, and personal jurisdiction over SS is proper because it is an entity incorporated in the State of Nevada, which maintains a principal place of business in the State of Nevada and this district.

6. Venue is proper in the United States District Court for the District of Nevada under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the District of Nevada. Pursuant to LR IA 1-6, venue lies in the unofficial Southern Division of this judicial district.

**STATEMENT OF FACTS**

7. Alexzandria Morgan is a singer-songwriter who has headlined venues across the globe under the stage name "Alli' Starr."

8. Morgan's talent as a vocalist has garnered her significant recognition amongst her peers, evidenced by her experience performing as a featured collaborator with renowned artists, such as Barbara Streisand, Will Smith, Evelyn Champagne King, Keith Harris of the Black Eyed



Peas, and Dizzy Wright.

9. In 2019, Morgan and the Defendants set out to record and produce a gospel version and remix of the song "People Get Ready" ("PGR"), originally released by the Impressions in 1965, and further covered by Rod Stewart and Jeff Beck in 1985.

10. At this point, Morgan and Skip had a prior working relationship for over three years, in which Morgan provided backing vocals during many of Skip's live performances, and on his recording projects.

11. As part of this working relationship, Morgan was routinely paid and provided accreditation for her work.

12. In 2019, Morgan provided backing vocals during the recording sessions that resulted in the audio recording of PGR (the "Vocal Performance").

13. Morgan's Vocal Performance is clearly audible throughout the PGR recording, and contributes heavily to the song's appeal amongst listeners.

14. Indeed, Skip has personally praised Morgan's significant contributions to PGR, and to the gospel project in which PGR was included.

15. Morgan agreed to provide the Vocal Performance in exchange for monetary compensation, and with the understanding that she would retain authorship in the resulting musical work—as was consistent with her prior experience working with Skip.

16. The parties conduct during these recording sessions, including conversations between Skip and Morgan, evidenced a mutual intent that each would be an author of the resulting musical work.

17. In providing the Vocal Performance, Morgan maintained creative control over how her vocals were used, mixed, and incorporated into the audio recording of PGR.

18. However, despite this mutual understanding and Morgan's significant contribution to PGR, Morgan was not credited in any liner notes, digital credit, meta data, or any other promotional materials associated with the release of PGR.

19. Defendants, and each of them, eventually released the PGR recording in 2021.

20. Upon information and belief, Defendants, and each of them, applied for and obtained a federal registration on the PGR recording - SRu001467083. A true and correct copy of a print out from the Copyright Office's website evidencing the registration is attached hereto as Exhibit A.

21. Upon information and belief, Defendants, and each of them, unbeknownst to Morgan, falsely represented to the Copyright Office that Defendant Martin was the sole author of the PGR work, and failed to include any reference to of provide recognition of Morgan's contribution of the Vocal Performance in and to PGR.

22. PGR garnered significant success upon release, including Emmy® award recognition from the Southeastern Chapter of the National Association of Television Arts and Sciences in 2023.

23. Prior to obtaining the Emmy®, Morgan individually, and through her representatives, requested credit on PGR as a background vocalist in writing.

24. In response to Morgan's repeated attempts to obtain accreditation for her contribution to the PGR project, Skip communicated to Morgan via text messages that he would provide Morgan a credit if the PGR project won the Emmy® award for which it was nominated.

25. Specifically, on May 25, 2023, Skip communicated to Morgan "I gave you a shout out on the people get ready project and now we have two Emmy nominations. If we should win, I will make sure that you get some kind of credit in the form of a plague or a certificate" (the "Agreement"). A true and correct copy of this correspondence is attached as Exhibit B.

26. Upon receiving the Emmy® award for PGR in 2023, producers Skip and David L. Cook publicly acknowledged various high-profile artists involved in the project, including Stevie Wonder and Taylor Dayne.

27. Morgan, however, was not acknowledged.

28. Morgan was not, and has never been, acknowledged on Skip's YouTube page, social media, website, or in any hard copy publication, for the Vocal Performance and her contribution to PGR.



29. Moreover, Morgan has never received her promised Emmy® award plaque or certificate under the terms of the Agreement, despite written assurances from Skip.

30. When confronted with this failure to acknowledge Morgan's contributions to the PGR project, Skip incorrectly claimed Morgan's work was performed on a work for hire basis.

31. On July 23, 2024, in response to a demand letter from Morgan, Skip falsely claimed Morgan's work was actually considered a work made for hire, and included various pictures of post-it notes with Morgan's name and the purported cash receipt for her background Vocal Performance. A true and correct copy of this correspondence is attached as Exhibit C.

32. While up to this point Martin had failed to provide Morgan accreditation for her Vocal Performance on PGR, this correspondence was the first time that Martin denied Morgan's authorship and interest in the copyright in the Vocal Performance.

33. These purported receipts do not constitute a written agreement between the parties as required under the Copyright Act, let alone provide a basis upon which the Vocal Performance could be deemed a work made for hire.

34. At no point in providing the Vocal Performance for PGR did Morgan ever agree to, or sign any agreement, assigning her copyright interest in her Vocal Performance on PGR to Defendants.

35. At no point in providing the Vocal Performance for PGR did Morgan ever agree to, or sign any agreement, indicating that her performance would be a work made for hire basis for Defendants.

36. Indeed, there has never been *any* written agreement of *any* kind between the parties, nor any verbal agreement regarding the Vocal Performance.

37. On August 1, 2024, Skip sent Morgan another text message that linked to an Instagram post featuring a video by Ray Daniels with the subtitle "Whoever Pays For The Studio Time Owns the Master." A true and correct copy of this correspondence is attached as Exhibit D.

38. Not only is the information Skip provided to Morgan on August 1, 2024 inaccurate and false, but it was also an attempt to intimidate Morgan, and to pressure her to cease her efforts



to obtain credit for her performance on PGR.

39. Defendants continue to derive financial benefit from PGR to this day.

40. PGR is currently available for purchase, download, and streaming on platforms, including, but not limited to, Spotify, Pandora, Amazon Music, Apple Music, YouTube, and Defendant's website located at <skipmartinmusic.com/single>.[1]

41. Since learning of Defendants', and each of their, infringing acts, counsel for Morgan has attempted to resolve this dispute without the Court's intervention by demand letters to Defendants, and each of them.

42. Defendants, and each of them, have been unwilling to fairly and adequately compensate Morgan for their continued denial of Morgan's authorship and infringement of the Vocal Performance, and for Skip's failure to uphold the terms of the Agreement.

## COUNT I—DECLATORY JUDGMENT

43. Morgan re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

44. An actual controversy has arisen and exists among the Morgan and Defendants, and each of them, as to whether Morgan's significant contributions to PGR via the Vocal Performance render her a co-author, and thus co-owner, of the copyright in PGR.

45. Morgan's interest in PGR arises from her authorship of the Vocal Performance, which she has never assigned any interest to any other person or entity. Morgan was not Defendants' employee at the time she authored the Vocal Performance, and she never entered into any written agreement with either Defendant agreeing the Vocal Performance would be created as a work made for hire.

46. In contributing to PGR via the Vocal Performance, Morgan exercised significant control over the work.

47. Morgan and Defendants expressed a shared intent to be co-authors in PGR.

---

[1] *See e.g.,* https://www.skipmartinmusic.com/single; https://www.youtube.com/watch?v=i6iQwsxCnu8; and https://open.spotify.com/album/6Cy2XlB8qXJHRcT0YWFjaI?si=3K3IxOw0Sh6UaLUxlFqGChg&nd=1&dlsi=16457bb607484f86.



48. The audience-appeal of PGR depends significantly on Morgan's Vocal Performance, which can be heard throughout the track.

49. As a co-author, Morgan is automatically a co-owner of the copyright to PGR under the Copyright Act, 17 U.S.C. § 201.

50. Defendants, and each dispute Morgan's co-authorship and co-ownership of PGR.

51. Morgan seeks a judicial declaration that she is a co-author and has a co-ownership interest in the PGR work and copyright.

52. Such a declaration of rights is necessary and appropriate at this time in order for Morgan to ascertain her rights and duties with respect to the Defendants, and each of them, and with respect to any third party who may claim an interest in the copyright to PGR.

## COUNT II—ACCOUNTING AGAINST DEFENDANTS

53. Morgan re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

54. Morgan is a co-author and co-owner of PGR. Co-owners owe a duty to account for all profits received from the exploitation of the copyright, including royalties, licensing fees, and other payments received on account of the copyright.

55. On information and belief, Defendants, and each of them, have received thousands of dollars in profits, royalties, licensing fees, and other payments from the exploitation of PGR.

56. Morgan, however, has received no royalties or payments of any kind.

57. Because no agreement between Morgan and Defendants exists to the contrary, Morgan is entitled to an equal share of all profits, royalties, licensing fees, and other profits derived from the exploitation of PGR.

58. Plaintiff is thus entitled to an accounting from Defendants, and each of them, of her share of the profits from PGR.

## COUNT III—FEDERAL COPYRIGHT INFRINGEMENT
### (COPYRIGHT ACT, 17 U.S.C. § 501)

59. Morgan re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

60. The PGR recording is the subject of a federal copyright registration, SRu001467083.

61. Morgan's Vocal Performance, as included in the PGR recording, is an original, creative work of expression fixed in a tangible medium from which it can be perceived, and is subject to full protection under the Copyright Act.

62. Morgan is the exclusive owner of all rights, title, and interest in and to her Vocal Performance.

63. Defendants, and each of them, without the permission or consent of Morgan who owns valid copyrights in the Vocal Performance, have reproduced and distributed and/or has caused the reproduction and distribution of the Vocal Performance.

64. The foregoing acts of infringement have been willful, intentional, and purposeful, in disregard of and indifference to the rights of Morgan.

65. The acts of Defendants, and each of them, complained of herein constitute an infringement of Plaintiffs' copyright in the Vocal Performance, and exclusive rights under copyright in violation of 17 U.S.C. §§ 106 and 501.

66. As a direct and proximate result of Defendant's infringement of Morgan's copyright and exclusive rights under copyright, Morgan is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000.00, or such other amounts as may be proper under 17 U.S.C. § 504(c).

67. Morgan is further entitled to her attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

68. On information and belief, Defendants, and each of them, had full knowledge of Morgan's rights in the Vocal Performance at the time Defendants advertised, displayed, distributed, offered for sale, and sold the PGR recording.

## COUNT IV — BREACH OF CONTRACT

69. Morgan re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

70. The Agreement is a valid and binding contract, evidenced by a writing, and



8

1  supported by valuable consideration.

71. Skip breached the duties under the Agreement by failing to provide Morgan credit for her contribution to PGR.

72. Skip's breach of his duties under the Agreement was unexcused.

73. As a direct and proximate result of Skip's breach of the Agreement, Morgan has suffered and will continue to suffer substantial damages, and is entitled to be placed in the position she would have been in had Skip fully performed the Agreement.

**COUNT V — BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

74. Morgan re-alleges and incorporates by reference all allegations contained in this Complaint as though fully set forth herein.

75. Morgan and Skip were each a party to the Agreement, which is a valid and existing contract.

76. Under the Agreement, Skip expressly promised to credit Morgan for her contribution to PGR in the form of a plaque or certificate if PGR won an Emmy® award.

77. Skip owed a duty of good faith to Morgan with respect to Skip's obligations under the Agreement.

78. Skip failed to credit Morgan for her contribution to PGR despite winning an Emmy® award.

79. Skip deliberately contravened the intention and spirit of the Agreement by breaching his promises to follow through on his obligations under the Agreement, and subsequently denying Morgan has any rights in her performance, by falsely claiming she provided her vocalist services on a work for hire basis.

80. In conducting himself in such a manner, Skip denied Morgan her justified expectation that Skip would act faithfully and deal fairly with respect to his obligations under the Agreement.

81. As a direct and proximate cause of Skip's actions in breach of the duty of good faith and fair dealing arising out of the Agreement, Plaintiff has sustained damages.



9

82. As a result of Skip's actions in breach of the duty of good faith and fair dealing arising out of the Agreement, Plaintiff has been required to retain counsel to prosecute this action and is, therefore, entitled to an award of reasonable attorneys' fees and costs of litigation incurred herein.

**PRAYER FOR RELIEF**

WHEREFORE, as to all of its Claims, Plaintiff hereby respectfully requests the Court award the following:

1. A declaration that Plaintiff is a co-author and co-owner of an interest in the copyright for PGR;

2. An order for Defendants to make a full accounting to Morgan of all profits, royalties, licensing fees, and other payments received from the exploitation of PGR, and that Plaintiff be paid her rightful share thereof;

3. Alternatively, Damages for copyright infringement of the Vocal Performance under the U.S. Copyright Act, 17 U.S.C. §§ 106 and 501, for the willful, intentional and purposeful disregard and indifference to Plaintiff's rights; and for publishing, distributing, and/or licensing copies of the Infringing Song. Plaintiff is entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C.

4. Damages to compensate Plaintiff for Skip's breach of the Agreement in an amount to be proven at trial, and pre- and post-judgment interest as allowed by law;

5. Reasonable attorneys' fees and costs; and

6. Such other and further relief as this Court deems just and proper.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

**JURY DEMAND**

Pursuant to FRCP 28, Plaintiff hereby demands a trial by jury on all issues for which a trial by jury may be had.

August 7, 2025

Respectfully submitted,

**DICKINSON WRIGHT PLLC**

*/s/ John L. Krieger*
John L. Krieger, Esq.
Nevada Bar No. 6023
Email: jkrieger@dickinsonwright.com
Jordan M. Marchello, Esq.
Nevada Bar No. 16926
Email: jmarchello@dickinsonwright.com
3883 Howard Hughes Parkway, Suite 800
Las Vegas, Nevada 89169-0965
Phone: (702) 550-4400
Fax: 844-670-6009

*Attorneys for Plaintiff*